UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-61378-GOLD

WENRICK MCKENZIE, individually
and on behalf of others similarly situated,

      Plaintiff,

v.

LINDSTROM AIR CONDITIONING, INC.
a foreign corporation; JEFFREY LINDSTROM,
individually; and DOUGLAS LINDSTROM,
individually,

      Defendants.
_____/

**PLAINTIFF, WENRICK MCKENZIE, AND OPT IN PLAINTIFFS, ROBIN FORBES,
MARCO IACENDA, DARIUS PHILLIPS, ISIDRO PINEDA AND ANTON LEWIS',
<u>MOTION FOR ATTORNEY'S FEES AND REASONABLE LITIGATION EXPENSES</u>**

      Plaintiff, WENRICK MCKENZIE ("MCKENZIE"), and Opt-in Plaintiffs, ROBIN FORBES

("FORBES"), MARCO IACENDA (IACENDA"), DARIUS PHILLIPS ("PHILLIPS"), ISIDRO

PINEDA ("PINEDA") and ANTON LEWIS' ("LEWIS"), (hereinafter collectively referred to as

"Plaintiffs") by and through their undersigned counsel and pursuant to the Federal Rules of Civil

Procedure and Local Rules for the Southern District of Florida, request the entry of an Order

awarding Plaintiffs their reasonable attorneys' fees, costs and reasonable expenses of litigation as the

prevailing party in this case and state:

1

## Authorization For Award

1.      The Fair Labor Standards Act, 29 U.S.C. §216(b), authorizes an award of attorneys' fees to the prevailing plaintiff in any proceeding to enforce 29 U.S.C. §206 (minimum wage) and §207 (overtime).

2.      This is a proceeding to enforce the provisions of the Fair Labor Standards Act ("FLSA"), 29 USC § 201 et. seq.

## Entitlement to Award

1.      A prevailing plaintiff's attorney's fee is mandatory. Shelton v. Ervin, 830 F.2d 182, 184 (11th Cir. 1987) ("Section 216 provides for an award of attorney's fees, as opposed to granting the court discretion in awarding such fees, to the prevailing plaintiff in FLSA cases."); Kreager v. Soloman & Flanagan, P.A., 775 F. 2d 1541, 1542 (11th Cir. 1985); James v. Wash Depot Holdings, Inc., 489 F. Supp. 2d 1341 (S.D. Fla. 2007); Bernal v. All Am. Inv. Realty, Inc., 479 F. Supp. 2d 1291 (S.D. Fla. 2006).

2.      A plaintiff who receives at least some relief on the merits of her claim is said to have prevailed.[1] Buckhannon Board and Care Home Inc. v. West Virginia Dep't of Health & Human Resources, 532 U.S. 598, 603-04 (2001) (citations omitted). Even an award of nominal damages satisfies this standard. Id. Furthermore, "**[p]revailing plaintiffs, which may include plaintiffs who favorably settle their cases, are entitled to attorney's fees under the FLSA**." Small v. Richard Wolf Medical Instruments Corp., 264 F. 3d 702, 707 (7th Cir. 2001) (citing, 29 U.S.C. § 216(b)) (emphasis added) (other citations omitted); see also, The Ocean Conservancy, Inc. v. National

---

[1]  And, therefore, in the context of the FLSA, is entitled to mandatory prevailing plaintiff attorney's fees and costs. 29 U.S.C. § 216(b); See,  Kreager, supra.

2

Marine Fisheries Order Service, 2004 U. S. App. Lexis 16737, *8 (9th Cir. 2004) (post-*Buckhannon*, a party still prevails when it enters into a legally enforceable agreement with defendant) (citation omitted).

3.      On December 3, 2009, at the Magistrate mediation conference, Plaintiffs accepted offers from Defendants to settle their claims in this action. The Court has approved the settlement by order dated December 11, 2009, and has administratively closed the case. D.E. 238. The settlement was exclusive of attorneys' fees and costs, which the parties agreed the Court would determine. *See* D.E. 238.

4.      Because Plaintiffs have accepted favorable settlements from Defendants and the Court has approved same, Plaintiffs are the prevailing party and therefore entitled to recover all reasonable attorneys' fees and costs incurred in this action. See The Ocean Conservancy, Inc., 2004 U. S. App. Lexis 16737 at*8 (post-*Buckhannon*, a party still prevails when it enters into a legally enforceable agreement with defendant) (citation omitted) See also, Hensley v. Eckerhart, 461 U.S. 424 (1983).

5.      Important to the Court's determination of the fee claim is the manner in which Defendants defended this action. Plaintiffs have taken every opportunity to effect a settlement in this case, including before filing suit. However, as set forth in more detail below, Defendants resisted Plaintiffs' attempts at an early and expeditious resolution of the case. Instead, Defendants chose to aggressively defend, withhold discovery, and engage in unnecessary discovery and motion practice, which resulted in Plaintiff having to file and respond to motions, thereby increase the costs and attorneys' fees in this case.

6.      Plaintiff, MCKENZIE filed this action on August 25, 2009. D.E. 1. Even before filing the Compliant, Plaintiff's counsel sought to resolve this matter with Defendants by sending an

email to Defendants' counsel on April 3, 2009 --- approximately four and a half (4 ½ ) months before suit was filed.  In that correspondence, Plaintiff's counsel advised defense counsel that he represented MCKENZIE and KARL GRANT ("GRANT")[2].  D.E. 171.  Plaintiffs' counsel also stated explicitly that he wished to resolve the claim "instead of simply filing suit, in light of the history of the litigation" and "wanted to explore settlement and have an exchange of information to assist in that regard."  Plaintiffs' counsel also requested copies of the personnel files for the Plaintiffs at that time.  April 3, 2008 E-mail appended as "Attachment 1."  At the time, Plaintiffs' demand was for the estimated amount of damages in the amount of One Hundred Nine and 00/100 dollars ($109.00) for each week within the three (3) year statute of limitations.[3]  Although Defense counsel advised that he would have to speak with Plaintiffs' supervisors and review their compensation records, Defendant never provided a counteroffer to the demand, nor did Defendant make any other efforts to resolve the claims.

7.     Having not heard from Defendants in response to the initial proposal, Plaintiffs were forced to file suit in August 2008.  Before Defendants' Answer to the Complaint was due, and even before GRANT was opted into this action, on September 14, 2008, Plaintiff's counsel emailed defense counsel again in yet another effort to resolve the case.   Defense counsel indicated in response that his client was "adamant" that the plaintiffs worked the hours that they reflected on their timesheets.  This is although the *amount* of time the Plaintiffs worked was only one of the issues in

---

[2] GRANT is no longer a Plaintiff in this case, having dismissed his claim voluntarily on July 27, 2009.

[3] MCKENZIE was employed by Defendants from May 2005 to January 2007.  Therefore, looking back three (3) years from April 3, 2008, his entire employment, seventy five (75) weeks would be included within the three (3) year statute of limitations. If MCKENZIE was paid $109.00 for each of those weeks, his total settlement sum would have been Eight Thousand One Hundred Seventy Five and 00/100 dollars ($8,175.00). At the Magistrate mediation, a Seven Thousand and 00/100 dollars ($7,000.00) settlement was negotiated for him.

the case.  In reality, even if Plaintiff recorded all of their hours worked, if there were weeks in which they worked over forty (40) hours, they got paid no overtime for it because Defendants' compensation plan was structured in such a way that Plaintiffs were not paid overtime even when they worked overtime.  Therefore, whether Plaintiffs recorded all of their hours worked was not the primary issue.  Defendants focus should have been on whether the compensation plan was compliant with the FLSA, which it was not.  Defense counsel also indicated that Defendants were "stubborn" and wanted Plaintiffs to "prove their case."  September 14, 2008 E-mail appended as "Attachment 2."

8.      Thereafter, PHILLIPS AND GRANT joined this action as opt-in Plaintiffs, and Plaintiffs moved for conditional certification of a collective action D.E. 16, which the Court granted on January 27, 2009.  D.E. 49.  Before the parties finalized the notice to send to potential opt in plaintiffs, on January 28, 2009, Plaintiffs' counsel asked Defense counsel whether Defendants had any interest in discussing settlement before notice was sent to the prospective plaintiffs.  Plaintiffs' counsel also made the same request on February 12, 2009.  However Defendants indicated that Plaintiffs were properly paid and they were only entitled to nominal recovery. January 28, 2009 E-mail appended as "Attachment 3."   Regardless, Defendant did not even make a nominal counter-offer.

9.      Having not received any settlement offers or counteroffers, Plaintiffs proceeded with the litigation and sought to take the depositions of Defendants' representatives with the most knowledge of the subject compensation plan.  Before spending significant time doing so, Plaintiffs again attempted to resolve this action by sending another settlement demand to defense counsel on March 23, 2009.  Again, Defendants did not make a counteroffer and instead claimed the demand

was "obscene."   March 23, 2009 E-mail appended as "Attachment 4."   As a result, Plaintiff proceeded with the action.

10.     Even after six (6) months of litigation and Plaintiffs making settlement demands, Defendants continued to refuse to make any offers to settle this action, including at mediation.  The parties were ordered to attend mediation on April 27, 2009 before mediator Don Spero.  The parties agreed they would attempt to resolve both the instant action, as well as a companion lawsuit that had been filed on behalf of the installers.[4] MCKENZIE appeared at mediation with his counsel and with the authority to settle on behalf of the opt in Plaintiffs.   Defendants on the other hand, did the opposite. Not only did the individual defendants fail to appear, but no representative of the corporate defendant appeared either.  When asked the reason for Defendants' absence, defense counsel advised that Jeffrey Lindstrom was at his office and Douglas Lindstrom went to a doctor's appointment.  To add insult to injury, defense counsel stated that the only authority he had to resolve the claim was to demand that Plaintiffs pay Defendants' litigation costs.   Consequently, mediation was a fruitless exercise, which resulted in additional attorneys' fees and costs.  D.E. 109.

---

[4] Plaintiffs were forced to file the companion lawsuit, <u>Forbes, et.al. v. Lindstrom Air Conditioning, Inc., et. al.</u>, Case No.: 09-60603-CIV-ZLOCH because defendants contended that based on their payroll records, some of the plaintiffs in the instant action were installers, and not service technicians.  However, Plaintiffs contended that although Defendants classified them as "installers", they performed the same work as service technicians and were paid under the same illegal compensation scheme as the service technicians.  Therefore, they still were entitled to be Plaintiffs in this case.  To clarify the pleadings, Plaintiffs sought leave to amend to add a claim for installers.  D.E. 59.  However, Defendants opposed the amendment although the parties were approximately nine (9) months away from trial, and the discovery for all the Plaintiffs would have been identical.  Ultimately, the Complaint was amended, but only MCKENZIE was allowed to seek recovery of his overtime as an installer in Count II of the Amended Complaint.  D.E. 92, 96.  The opt-in plaintiffs had to file the <u>Forbes</u> case <u>to recover any compensation they were owed for time they worked as installers. This resulted in some of the opt-in plaintiffs</u> litigating two (2) claims in two (2) different lawsuits although Defendants and the violations were identical.

11.     Approximately ten (10) days later, Plaintiffs' counsel advised defense counsel that fees and costs were in excess of Eighty Five Thousand and 00/100 dollars ($85,000.00).  At this time Plaintiffs' counsel suggested that the parties entertain the possibility of settling the Plaintiffs' claims and having the Court determine Plaintiffs' counsel's fees and costs.   The parties also agreed to attend another mediation on May 21, 2009.  E-mail dated May 5, 2009 appended as "Attachment 5." Like the first mediation, although Defendants actually attended this time, they failed to engage in any meaningful settlement dialogue.   Instead, Defendants left mediation before it was even concluded, and failed to make one viable settlement offer or counteroffer.

Instead, after mediation, Defendants made an offer of judgment in the amount of Two Thousand Eighty and 00/100 dollars ($2,080.00) to MCKENZIE, plus an additional Two Thousand and 00/100 dollars ($2,000.00) as attorneys' fees to resolve his claim for overtime as an installer (Count II of the Amended Complaint).   A copy of the Offer of Judgment is appended on "Attachment 6."   In essence, Defendant was trying to resolve Count II of Plaintiff's Complaint, and was offering nothing towards Count I, which was the service technician claim.   Regardless, the consideration offered to resolve Count II (installer claims) was insufficient and not accepted.

12.     Notwithstanding, after mediation, Plaintiffs' renewed their demand for Sixteen Thousand and 00/100 dollars ($16,000.00), exclusive of attorneys' fees and costs.  A copy of the June 4, 2009 E-mail is appended as "Attachment 7."   Defendants again, failed to provide a counteroffer, even though six (6) months later, this matter was resolved for substantially the same amount at the Magistrate Mediation.  Specifically, Mr. McKenzie is receiving Seven Thousand and 00/100 dollars ($7,000.00) to resolve his claim.  Additionally, each opt –in Plaintiff is receiving Five Hundred and 00/100 dollars ($500.00).   However, each opt-in previously recovered $500.00 in the

<u>Forbes</u> case to resolve their installer claims, and thus, the total amount of the Magistrate mediation settlements and the companion case installer resolutions equal Thirteen Thousand and 00/100 dollars ($13,000.00), all of which was at issue when Plaintiffs' demanded Sixteen Thousand and 00/100 dollars ($16,000.00) to settle their claims globally exclusively of fees and costs    The Thirteen Thousand dollar ($13,000.00 ) amount is over eighty percent (80%) of what Plaintiff ultimately recovered.  Between June 2009 when this demand was made, and December 3, 2009, when this mater was resolved, **Plaintiffs incurred over Eighty Thousand and 00/100 dollars ($80,000.00) in attorneys' fees** taking depositions, briefing and arguing a Motion for Summary Judgment as to Defendants' clear liability, and preparing for trial, among other necessary tasks.

13.    Although Defendants continued to ignore Plaintiffs efforts at a resolution, Plaintiffs continued to present possible alternatives to Defendants, including on July 8, 2009, when Plaintiffs counsel advised defense counsel that if the Defendants issued offers of judgment to the Plaintiffs, except GRANT and MCKENZIE, in the amount of Five Hundred and 00/100 dollars ($500.00), exclusive of attorneys' fees and costs, Plaintiffs would accept.  July 8, 2009 E-mail appended as "Attachment 8."  This offer would have allowed Defendants to at least satisfy the claims of the opt ins who had smaller claims, and allow the parties to proceed to trial with GRANT and MCKENZIE who had more substantial claims.  Defendants' response was no different from previous ones. Defense counsel advised that he would convey the offer to his client, but proceeded to denigrate Plaintiffs' claims as lacking "merit."  <u>Id.</u>  As before, Defense counsel never sought to resolve the claim beyond these comments.

14.    Even after Defendants showed no real interest in settlement, Plaintiffs continued to reach out to Defendants in an effort to resolve the case.  Such efforts were made on July 30, 2009,

September 28, 2009. July 30, 2009 E-mail and September 28, 2009 E-mail appended as Attachments 9 and 10, respectively.

15.     As the parties prepared for trial, and plaintiff was preparing to order depositions, Plaintiffs' counsel made one last attempt at resolving this matter and emailed defense counsel on September 28, 2009 to determine whether Defendants had any interest in settlement.   Defense counsel's initial response was that the fees could be a "roadblock to settlement."   This is after Plaintiffs had made multiple settlement offers that had been ignored, which required Plaintiffs to continue to litigate this matter to properly prepare for trial and to comply with this Court's pretrial deadlines.  By this time, the litigation and Defendants' needlessly aggressive tactics had resulted in attorneys' fees of over One Hundred Fifty Thousand and 00/100 dollars ($150,000.00).[5]

16.     Despite Defendant's reluctance to explore settlement, Plaintiffs tried once again to resolve this matter on November 7, 2009, by advising defense counsel that Mr. McKenzie would accept Ten Thousand and 00/100 dollars ($10,000.00) exclusive of attorneys' fees and costs, and all of the opt-in Plaintiffs would each accept Five Hundred and 00/100 dollars ($500.00), plus Two Thousand Five Hundred and 00/100 dollars ($2,500.00) in attorneys' fees and costs per opt-in.  In terms of the damages to the Plaintiffs, this offer was Thirteen Thousand and 00/100 dollars ($13,000.00), which is the amount the plaintiffs have ultimately settled for.  Defendants again refused to accept the offer notwithstanding its apparent reasonableness when compared to the ultimate outcome of the case. November 7, 2009 E-mail appended as "Attachment 11."

---

5 By this time, Plaintiff had deposed five of Defendants' representatives, including the individual defendants. Additionally, Defendants had already deposed all but one of the plaintiffs.  The parties had also retained experts, who had already spent significant time reviewing relevant discovery and preparing their reports.

17.     The parties have now settled as a result of the Magistrate Mediation, and Mr. McKenzie is receiving Seven Thousand and 00/100 dollars ($7,000.00), exclusive of attorneys' fees and costs.  This represents 85% of the Eight Thousand One Hundred Seventy-Five and 00/100 dollar ($8,175.00) presuit demand he  made in April 2008, 145% of the Five Thousand Six Hundred Thirty Two and 00/100  dollar ($5,632.00) he claimed in his Amended Statement of Claim [D.E. 115], and 126% of the Six Thousand Four Hundred Fifty Two and 15/100 dollars ($6,452.15) he claimed in his damage interrogatory responses.  However, Plaintiff had to endure fourteen (14) months of Defendants' gamesmanship to obtain what Defendants knew all along that he was properly owed.

18.     Similarly, each opt in received 100% of what they each requested to settle their claims July 8, 2009 and November 7, i.e., Five Hundred and 00/100 dollars ($500.00) **in addition to the Five Hundred and 00/100 dollars ($500.00) they received to settle their claims in <u>Forbes</u>**.  But for Defendants' obstreperous defense strategies, this matter could have been resolved sooner with all Plaintiffs obtaining substantially what they sought to recover in this action.

19.     Based on Defendants attitude toward resolution of the claims and their behavior throughout this litigation, it is no surprise that Plaintiff had difficulty settling this matter with Defendants. Further, Defendants and their counsel are well-aware of their obligations under the FLSA.  The instant lawsuit is the **<u>fifth</u>** time these Defendants have been sued for the **<u>same</u>** overtime violations.  <u>See</u>, <u>Look v. Lindstrom Air Conditioning, Inc.</u>, 05-60311-HUCK; <u>Forbes v. Lindstrom Air Conditioning, Inc.</u>, 05-61479-ZLOCH; <u>Kenol v. Lindstrom Air Conditioning, Inc.</u>, 0:06-cv-61402-HUCK; and <u>Tucker v Lindstrom Air Conditioning, et. al</u> 0:07-cv-60015-DLG.

20.     Thus, with full knowledge of the FLSA and its requirements, Defendants chose nonetheless to engage in discovery and motion practices, negotiation maneuvers and stonewalling,

that delayed the expeditious resolution of the case and caused Plaintiffs to unnecessarily incur additional attorney's fees and costs. Defendants' conduct in the instant case is tantamount to that addressed by the court in Heder v. City of Two Rivers, 255 F.Supp.2d 947, 956 (E.D. Wis. 2003):

> Finally, and most importantly, from the beginning there was very little money [in FLSA damages] at issue in this case;[6] and the [defendant] City has only itself to blame for the disproportionality between the attorney's fees incurred and the amount Heder recovered.
> . . .
>
> Neither Heder nor Olson [plaintiff's counsel] should be forced to swallow expenses incurred largely as a result of the City's approach to this litigation.

Quoting the Supreme Court, the Heder court further noted, **The [defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response**. Id. (quoting, City of Riverside v. Rivera, 477 U.S. 561, 580-81 n. 11 (1986) (plurality opinion)) (emphasis added).

21.     This is a classic case of such conduct. From the very outset of this action, Defendants expressed that Plaintiffs were owed nothing and refused to make a reasonable settlement offer to resolve this case. Defendants then refused to attend mediation, in direct violation of this Court's Order Setting Pretrial Deadlines ("Trial Order"), necessitating Plaintiff's filing a Motion to Compel mediation so the parties could be in full compliance with the Trial Order.

22.     Defendants also claimed they had no knowledge of what Plaintiffs' damages were, and filed an extensive Motion for Sanctions [D.E. 206] and Motions to Compel [DE 80, 81]on that basis although Plaintiffs had provided Defendants with specific calculations and totals of their damages, and moreover, the very documents on which Plaintiffs damages would be calculated were

---

[6] In contrast, the amount of money at issue in the instant case for Mr. McKenzie was significant.

in Defendants' possession all along.   However, it only resulted in Plaintiffs' counsel needing to re-review Defendants' complicated payroll records and prepare individual spreadsheets for each Plaintiff causing more time and expense to be incurred.  Furthermore, Plaintiffs also had to spend significant hours review Defendants' global position system (GPS) records for each Plaintiff to calculate damages for Plaintiffs' "off the clock" time claims.  So of the GPS records were over 200 pages long and had to be interpreted line by line and compared to the payroll and time records.   All of these attorney's fees would have been avoided if Defendant had made reasonable counter-offers to Plaintiffs.

23.    Although Defendants were quick to file Motions to Compel Plaintiffs to provide better damage calculations, Defendants did so while withholding timesheets on which Plaintiffs' counsel had to rely to do those calculations.  When Plaintiffs' counsel could not obtain the timesheets via friendly requests, Plaintiffs' counsel had to file a Motion to Compel Timesheets to obtain them, which the Court granted. D.E. 105.

24.    Not only did Defendants withhold necessary documents, but Defendants failed to timely provide their expert witness report, which resulted in the need for Plaintiffs to file a Motion to Strike Defendants' Expert Witness.  D.E. 102.  Moreover, even after the court allowed Defendants' expert to testify, Defendants refused to produce their expert for deposition when requested, resulting in Plaintiff having to move to compel his deposition.  D.E. 196.  Similarly, Defendants refused to produce their corporate representative on the issue of the "good faith" defense (one of the critical issues in this case) after Plaintiff attempted to set his deposition five times. Defendants went so far as to not produce the witness on a date when he was scheduled to appear, which resulted in Plaintiff incurring costs for the court reporter to appear at the deposition.  Similar

to Defendants' failure to produce their expert at deposition, Plaintiff had to move for sanctions because of Defendants' failure to produce the witness.  [D.E. 195].

25.     Defendants also hampered the efficient litigation of this action by forcing Plaintiffs to the Forbes action.  The futility in Defendants forcing Plaintiffs to file the Forbes action is apparent in the fact that the Forbes case settled within four (4) months of being filed.  The result would very well have been the similar in the instant action had Defendants expressed any interest in settlement in response to Plaintiffs' numerous propositions.  Ultimately, Defendants could have resolved this matter for a fair amount of damages and be facing exposure to a much smaller attorneys' fee award.

26.     All of this misconduct proved unsuccessful because Defendants have ultimately agreed to pay Plaintiffs substantially what they sought before and during this litigation.  Plaintiffs should not be made to take a deep discount of their attorneys' fees when Defendants chose to play "hard ball" and Plaintiffs had an obligation to respond.

27.     Pursuant to S.D. Fla. Local Rule 7.3(A), Plaintiffs' and Opt-In Plaintiffs' Fee and Retainer Agreement with the Shavitz Law Group provides the following terms:

Paragraph 1 of the Agreement provides:

In regards to attorney's fees, Shavitz Law Group, P.A. has agreed to accept this case on a contingent basis so that if no recovery is made, there would be no attorney's fees due.

Paragraph 2 of the Agreement provides:

I [Plaintiff] understand that if Shavitz Law Group, P.A. files suit against Defendant(s), it will seek attorney's fees under Federal Statutes and case law against Defendant(s).  These fees and costs will be paid by the Defendant(s).  I agree that the fees Shavitz Law Group, P.A. will seek against the Defendants will be based upon an hourly rate using the Lodestar method of calculating court awarded attorney's fees in Florida. In the event a judgment is entered, or Order entered which provides for attorney's fees to be paid to

Plaintiff or Plaintiff's counsel, or a Stipulation agreed to by and between the parties which provides for attorney's fees to be paid to Plaintiff or Plaintiff's counsel, Shavitz Law Group, P.A.'s fees shall be the greater of (I) and (ii):

1.   A reasonable attorney's fee as awarded by the Court pursuant to Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. 201 et seq., or under the Florida or Federal Statute of case law, or

2.   Forty percent (40%) of the total amount recovered on my behalf (including any court awarded attorney's fees).

## Amount of Attorney's Fees

28.   The initial estimate of a reasonable attorneys' fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate. Adjustments to that fee may then be made as necessary in the particular case.  Blum v. Stenson, 465 U.S. 886, 888 (1984); Norman v. Housing Auth., 836 F. 2d 1292 (11th Cir. 1988).

## Number of Hours Reasonably Expended

29.   Counsel for prevailing plaintiffs should be paid as is traditional with attorneys compensated by a fee paying client for all time reasonably expended on a matter.  Blanchard v. Bergeron, 489 U.S. 87, 91 (1989).  Hours reasonably expended means work that would be paid for by a reasonable client of means seriously intent on vindicating the rights in issue.  Perkins v. Mobile Housing Authority, 847 F.2d 735, 738 (11th Cir. 1988).

30.   Appended to this Motion as composite "Attachment 16" are the Declarations of Gregg I. Shavitz, Esq., Christine M. Duignan, Esq., and Camar R. Jones, Esq. in which Plaintiffs' counsel verify the instant Motion.  The declarations contain a certification that the attorneys have fully reviewed the time records that are the supporting data for their declarations and that the hours claimed are well grounded in fact and justified.  The declaration of Gregg. I. Shavitz shows that a total of 124 hours of his time was spent litigating this case through December 2009, in addition to

95.20 hours of time by paralegals, Tayara Oliveira, Renata Araujo, Johann Semexant,  Iris Zambrano, Cassandra Francois, Glenda Gilles and Adriana Castrillon-McNish. The declaration of Christine M. Duignan, Esq. shows that a total of 33.5 hours of her time was spent litigating this case through December 2009. Also, the Affidavit of Camar R. Jones, Esq. shows that a total of 450.35 hours of his time was spent litigating this case through December 2009.[7]

31.    Sworn testimony by counsel regarding the hours incurred litigating this case is evidence of considerable weight of the time required and it must appear the time is obviously and convincingly excessive to reduce the hours.  Perkins v. Mobile Housing Authority, 847 F.2d at 738 (11th Cir. 1988).

32.    The prevailing party is entitled to attorneys' fees for time spent litigating an attorneys' fee award, Jonas v. Stack, 758 F.2d 567, 568 (11th Cir. 1985).

33.    Appended to this Motion as "Attachment 13 is the Declaration of William Julien, who has been a member of the Florida Bar since 1994 and is an active trial practitioner in labor & employment law.  Mr. Julien has reviewed the files of counsel for the Plaintiffs and the hours affidavits of counsel and is of the opinion that the work performed was kept to a minimum of what was reasonable and necessary, no unnecessary motions were filed, no unnecessary depositions taken, no unnecessary written discovery propounded.  Mr. Julien has examined the time listed on the hours Affidavit of counsel and compared it to the work performed and is of the opinion that work was done efficiently and without undue prolongation of effort.  Mr. Julien is also of the opinion that the work done by counsels for the Plaintiffs were not redundant, reflects a distinct contribution to the case and

_____

7 Per agreement of the parties, Plaintiffs' counsel is not seeking attorneys' fees for litigating Plaintiffs' claim for attorneys' fees, although, as a matter of law, Plaintiffs' counsel is entitled to such fees.

is within the customary practice in this area of the law as is practiced in Dade, Broward and Palm Beach Counties, Florida.

## REASONABLE HOURLY RATE

34.     Fee awards are to be calculated based on prevailing market rates in the local community for similar services by lawyers of reasonably comparable skill, experience and reputation.  <u>Blum</u>, 465 U.S. at 894.  Evidence of prevailing rates for comparable services can be adduced either through direct evidence of charges by lawyers under similar circumstances or by opinion evidence. <u>Duckworth v. Whisenant</u>, 97 F.3d 1393 (11th Cir. 1996); <u>Norman</u>, 836 F.2d at 1299.

35.     Evidence of comparable skill should be defined in terms of length and type of experience, education, professional accomplishments and reputation.  <u>Perkins</u>, 847 F.2d at 737, n.1. The Court should also analyze the skills of organization, efficiency, knowledge of trial practice, knowledge of substantive law and persuasiveness in determining the skill level of the lawyer seeking an award of attorneys' fees.  <u>Norman</u>, 836 F.2d at 1299.

36.     Gregg I. Shavitz has been a member of the bar of this Court and the Florida Bar since 1994, and is AV rated by Martindale Hubbell.  He has successfully obtained relief for Plaintiffs in FLSA since that time.  As Mr. Shavitz's practice concentrates on representing Plaintiffs in FLSA cases, he has represented over 6000 such Plaintiffs over that period of time.  Additionally, he has lectured in the past at seminars sponsored by the Labor and Employment Section of the Florida Bar, and has spoken at the Labor and Employment Section Certification Review Seminar.   The 2009 Super Lawyers Publication listed Mr. Shavitz as one of Florida's Rising Stars in the field of Labor

and Employment law, and the 2009 and 2010 South Florida Legal Guide recognized Mr. Shavitz a

Top Lawyer in the field of Wage and Hour law.

37.     Mr. Shavitz has received fee awards recognizing his reasonable rate to be $350.00 per

hour. Perez v. Smith Services, Inc., Case No. 06-61297-CIV-MOORE.  Additionally, this court has

determined that an hourly rate of Three Hundred Fifty and 00/100 dollars ($350.00) is reasonable for

comparable attorneys within this jurisdiction.  Parness v. Piazza Benvenuto Ristorante, et. al., No.

08-61604-CIV-COHN/SELTZER 2009 U.S. Dist. LEXIS 392264 (S.D. Fla. April 24, 2009) (finding

$350.00 a reasonable hourly rate in FLSA action for attorney admitted to practice in 1991);

Goodman v. Sperdutti Enters., Inc., et. al, No. 08-62096-CIV-COHN/SELTZER 2009 US DIST

LEXIS 95623 (S.D. Fla. October 6, 2009) (finding $350.00 a reasonable hourly rate for attorney

admitted to practice in 2001); CC-Aventura, Inc., et. al. v. The Weitz Co., LLC, et.al., No. 06-21598-

CIV-Huck/Simonton (S.D. Fla. January 31, 2008) (holding that $400.00 per hour was reasonable

hourly rate for eighth year associate).

38.     Christine M. Duignan, who also performed work in this case, has been a member of

this Court and the Florida Bar since 1991.  For the past twelve (14) years, Ms. Duignan's practice has

concentrated on employment law.  For the past four (6) years, her practice has been devoted to

representing Plaintiffs in FLSA cases.  Ms. Duignan has received fee awards recognizing her

reasonable rate to be $300.00 per hour. Johnson v. Rosburg, Case No. 03-80834-CIV-HURLEY.

39.     Mr. Jones has been a member of the Florida Bar since 2004 and is also a member of

the United States District Courts for the Southern and Middle Districts of Florida and the Eleventh

Circuit Court of Appeals.  For approximately the past five (5) years, the focus of Mr. Jones' practice

has been labor and employment law matters, representing both plaintiffs and defendants in matters

arising under state and federal labor and employment laws, including the FLSA.  Mr. Jones has also counseled numerous employers regarding compliance with various labor and employment laws, and defended employers in claims arising under those laws.

40.     Mr. Jones has handled hundreds of cases for plaintiff-employees arising under state and federal anti-discrimination and wage and hour laws.  Between approximately June 2004 and October 2006, Mr. Jones worked as an associate attorney with the Fort Lauderdale labor  and employment boutique, The Amlong Firm f/k/a Amlong & Amlong, P.A., representing plaintiffs in discrimination, unpaid wages and FLSA claims in throughout South Florida.  Then from October 2006 to December 2008, Mr. Jones worked as an associate attorney with The Kopelowitz Ostrow Firm, PA, where he was one of two labor and employment attorneys within the thirteen-lawyer firm, who represented plaintiffs in discrimination, unpaid wages, FLSA and FMLA claims.  Additionally, Mr. Jones counseled employers on compliance with the various state and federal labor and employment laws, defending employers in claims filed by employees, and representing employers in enforcing non-compete and trade secret agreements. Mr. Jones has continued his practice representing plaintiffs in individual and collective actions in the Federal Courts throughout the State of Florida, as well as in state and federal employees' rights issues including work place discrimination claims based on employees' age, race, national origin, sex/gender (including sexual harassment), disability, FMLA leave, and worker's compensation retaliation.

41.     Mr. Jones has received fee awards based upon a reasonable rate of Tow Hundred Fifty and 00/100 ($250.00) per hour in cases including Ramirez v. Aventura Auto Sales, Inc., Case No.07-61852-ZLOCH, MYD Marine Distributors, Inc. v Donovan Marine, Inc., Case No. 07-61624-CIV-ZLOCH, and Dorvilus v. Schlomie's Kosher Bakery, Inc., Case No. 08-61236-COHN.  Similarly,

Mr. Jones has also been retained by employers defending FLSA claims including the following actions in which he served as defense counsel, and was retained at the hourly rate of $250.00/hour in cases in which he was paid each month upon regular billings and with all costs advanced by the corporate-Defendants:

        a.      <u>Souza v. Betinho's Bar, Inc.</u>, Case No. 07-61696-Dimitrouleas (S.D. Fla.), $250.00/hour;

        b.      <u>Domingues v. Betinho's Bar, Inc.</u>, Case No. 08-60297-Dimitrouleas (S.D. Fla.), $250.00/hour;

        c.      <u>Brandao v. Betinho's Bar, Inc.</u>, Case No. 08-60344-Dimitrouleas (S.D. Fla.), $250.00 per hour;

        d.      <u>Blanco v. Iron Corporation</u>, Case No. 08-61333-ZLOCH (S.D.Fla.), $250.00 per hour;

        e.      DeJesus v Tri County Humane Society, Case No. 09-80370-Marra (S.D. Fla.), $250.00/tour;

        f.      Maximino v. Cedar's Palace, Case No. 09-60434-Lenard (S.D. Fla.), $250.00 per hour.

    42.    The Affidavit of Mr. Julien[8], indicates that he has reviewed the files of the Shavitz Law Group, Plaintiffs' counsels' Affidavits and the original time records.  He is familiar with the attorneys working with the Shavitz Law Group and is familiar with the length of experience of the lawyers, their reputation in the community, their skill and experience and the hourly rate received by those lawyers for work of equal quality to that performed in the present case.  It is the opinion of Mr. Julien, that a reasonable prevailing market rate in our local community for services similar to those performed by Mr. Gregg I. Shavitz is appropriately due the rate of $350.00 per hour, especially in a case such as this where Defendants, a four time offender, unnecessarily prolonged and complicated

---

[8] Mr. Julien's declaration is appended as "Attachment 12."

the path to timely settlement. It is also the opinion of Mr. Julien that work performed for the services of Christine Duignan is appropriately due the rate of Three Hundred and 00/100 dollars ($300.00) per hour. Similarly, it is Mr. Julien's opinion that the work performed by Camar R. Jones is appropriately due the rate of Two Hundred Fifty and 00/100 dollars ($250.00) per hour.

### Total Fee and Costs Award

43.    The total fee requested by Shavitz Law Group is One Hundred Seventy Five Thousand Four Hundred Eighty Two and 50/100 dollars ($175,482.50).  The total cost award requested is Eighteen Thousand Seven and 00/100 dollars ($18,007.23). See Attorney Fee Ledger appended as "Attachment 13", and Cost Ledger appended as "Attachment 14."

44.    By this Motion, Plaintiffs seek the following award under 29 U.S.C.§216(b) for attorney's fees and costs of litigation in this case of One Hundred Ninety Three Thousand Four Hundred Eighty Nine and 73/100 dollars ($193,489.73) against all Defendants, jointly and severally:

      A.    Fees of Shavitz Law Group $175,482.50.

      B.    Costs of litigation: $18,007.23.

### Certification of Good Faith Conference

By executing this Motion, counsel for Plaintiffs certify, pursuant to Southern District of Florida Local Rule 7.3, that Plaintiffs' counsel has fully reviewed the time records and supporting data in support of such Motion and this Motion is well grounded in fact and justified.  Counsel for Plaintiffs has made the required good faith attempt to resolve this matter by contacting counsel for the Defendants, in writing.  Undersigned counsel represents that as of the filing of this Motion, the parties have been unable to agree upon the amount of Plaintiffs' attorneys' fees and costs incurred through the date of this Motion.

Dated: December 30, 2009                    Respectfully submitted,
Boca Raton, Florida

                                            **s/CAMAR R. JONES**
                                            Gregg I. Shavitz
                                            Florida Bar No. 11398
                                            Email: gshavitz@shavitzlaw.com
                                            Camar R. Jones
                                            Florida Bar No. 720291
                                            Email: cjones@shavitzlaw.com
                                            SHAVITZ LAW GROUP, P.A.
                                            1515 S. Federal Hwy., Suite 404
                                            Boca Raton, Florida 33401
                                            Telephone: 561-447-8888
                                            Facsimile: 561-447-8831
                                            Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on **December 30, 2009**, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

                                            **s/GREGG I. SHAVITZ**
                                            Gregg I. Shavitz

## SERVICE LIST
**Wenrick McKenzie v. Lindstrom Air Conditioning Inc.**
**CASE NO. CASE NO. 08-61378-GOLD**
**United States District Court for the Southern District of Florida**

Clifford A. Wolff, Esq.
The Wolff Law Firm
E-mail: cwolff@wolfflawfirm.com
P. O. Box 11421
Fort Lauderdale, FL 33339
Tel: 954-599-9653
Fax: 954-827-8300
Attorneys for Defendants
Served via CM/ECF